JOSEFA GONZÁLEZ VDA. DE MARGARIDA, demandante y apelante, v. JOSÉ CALDERÓN MIRÓ, demandado y apelado.

Núm. 6678.—*Sometido:* Febrero 25, 1936. *Resuelto:* Marzo 19, 1937.

*H. Torres Solá,* abogado de la apelante; *R. Ramírez Pabón,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este pleito se inició por demanda presentada en la Corte de Distrito de San Juan en la que se alega substancialmente que la demandante es dueña de dos solares que colindan entre sí y que el demandado es también dueño de otros dos solares que colindan entre sí, colindando uno de ellos con uno de los de la demandante; que el demandado tiene instalados en sus solares una fábrica de hielo, un garage y un establo y ha abierto un zanjón que parte de su fábrica y penetra en y cruza por los solares de la demandante para salir de las aguas, grasas, aceites y otros residuos procedentes de su fábrica; que entre demandante y demandado no existe contrato alguno de servidumbre que permita al demandado la construcción y el uso del indicado zanjón sobre los solares de la demandante, y que la demandante ha requerido del demandado el cese de tal situación sin resultado.

Contestó el demandado admitiendo los hechos relativos a la propiedad y situación de los solares. Admitió también la existencia del zanjón, pero negó haberlo abierto y que partiera de su fábrica de hielo, alegando en contrario que el zanjón forma parte del que se abrió hacía más de veinte años por el causante de la demandante para desagüe de una

parcela de su propiedad que dividió en solares que vendió a distintas personas entre ellas el demandado. Negó que por el zanjón corrieran grasas, aceites y otros residuos y agua hirviendo, corriendo por el contrario aguas puras que no arrastran sustancias nocivas y las aguas pluviales que proceden de sus solares y de todos los otros superiores a los suyos vendidos por el causante de la demandante. Negó la no existencia de contrato y afirmó que por el de compraventa del solar celebrado entre el causante de la demandante y el demandado adquirió éste a título de servidumbre el derecho a usar para desagüe el zanjón que permaneció como signo aparente. Negó que hubiera sido requerido por la demandante y afirmó que ha sido él el que repetidamente ha requerido a la demandante para que no le perturbe en el uso del zanjón.

Como materia nueva alegó que en uno de sus solares segregado de la finca del causante de la demandante levantó una fábrica de hielo hacía más de nueve años existiendo para esa fecha el zanjón abierto por el propio causante de la demandante; que dicho zanjón ha venido utilizándose como desagüe por los adquirentes de solares; que los solares de la demandante son más bajos que los del demandado, y que éste recoge y controla las aguas que proceden de su establecimiento industrial y las hace correr por el repetido zanjón, que es prolongación del que fué abierto por el propio causante de la demandante, desde hace más de nueve años; que la calle a que dan los solares de la demandante y del demandado es más alta que éstos y no tiene sistema de alcantarillado y el único paso que tienen las aguas de los solares del demandado y de su establecimiento industrial hasta la zanja más próxima del alcantarillado público es el zanjón que cruza los solares de la demandante.

Fué el pleito a juicio. Se practicó una larga prueba documental, testifical y de inspección ocular, y basándose en ella y en las alegaciones, la corte de distrito declaró la demanda sin lugar, sin especial condenación de costas.

 A los efectos de resolver con claridad y en justicia la cuestión fundamental envuelta, creemos necesario transcribir la relación del caso y opinión de la corte sentenciadora. Comienza describiendo los solares de que se trata y luego dice:

"La evidencia ha demostrado que para el desagüe de esos solares y de los demás superiores existentes de la misma finca, que están todos en declive y más bajos que la calle González, hacia donde dan sus frentes y más bajos también de un terraplén de la compañía del trolley colindante por sus fondos, existía un antiguo zanjón de desagüe, que cruzaba todos los solares hasta llegar a la zanja del alcantarillado público o quebrada de 'Los Muertos'. Ese zanjón existía ya cuando en 1914 compró su solar don Guillermo Rengel, que es el primero de esa sección, y fabricó en 1915 una casa donde vive. A los efectos de la urbanización el terreno fué inspeccionado en 1922 por el ingeniero sanitario Octavio Marcano y el inspector Quintín Santana Martínez, y también por este último cuando se construyó la fábrica de hielo, quienes vieron la zanja como el desagüe natural del terreno y de las aguas de dicha fábrica. El ingeniero José Llompart Meléndez, quien preparó en 1922 el plano de urbanización también declaró sobre la existencia del zanjón. José Calderón Miró testificó que don Manuel González era un hombre de 80 a 85 años y que su hijo Luis González era el encargado de la propiedad y el que actuaba en representación de su padre, firmando luego éste las escrituras y que con Luis González convino verbalmente cuando compró el solar, utilizar también el zanjón para las aguas de los condensadores de la fábrica de hielo, con la condición de tenerlo siempre limpio para que discurrieran por él fácilmente, no existiendo otro sitio que ese zanjón por donde descargar esas aguas hasta la quebrada 'Los Muertos', debido a la inclinación y configuración del terreno.

"La evidencia ha demostrado que además de las aguas naturales y de las provenientes de la industria del demandado, descargan también en el zanjón las aguas procedentes de un pozo muro existente en el solar anterior a los del demandado, propiedad hoy de doña Eloísa Laborde Vda. de Quintero, y antes de Mariano Font, que fué vendido también por el causante de la demandante. Estas aguas se conducen por un tubo subterráneo que se encuentra colocado en el fondo de los solares del demandado, en su colindancia con el terraplén del trolley.

"Quedó comprobado por la inspección ocular, que tuvo lugar el 24 de mayo de 1933, que los solares que fueron propiedad de los señores Mariano Font y Gabriel Amorós, así como la calle González, están más altos que los del demandado, y que por haberse construído un muro en la colindancia sur de éstos, aquéllos actualmente desagüan a la calle González, por estar más altos que ésta; pero por el contrario, los solares del demandado, estando más bajos que la calle y el terraplén, en sus colindancias este y oeste, las aguas naturales no tienen otro sitio por donde discurrir hasta la Quebrada 'Los Muertos', que el zanjón que cruza el fundo de la demandante desde hace más de veinte años.

"La servidumbre de vertiente de que se trata, constituída por el anterior dueño, para el desagüe de los solares de la urbanización, obliga a la demandante como continuadora de la personalidad del causante, y está ahora impedida de negar la existencia de dicha servidumbre, además de que, de acuerdo con el artículo 559 del Código Civil Revisado, los predios inferiores están sujetos a recibir las aguas que a ellos afluyan de los predios superiores, de un modo natural, y en virtud de la inclinación de los terrenos. Y en cuanto a las aguas procedentes del establecimiento industrial del demandado, que según la evidencia ha demostrado no llevan o arrastran sustancias nocivas a la salud y que tampoco tienen otro medio de desagüe que el zanjón, debido a la topografía del terreno, parece a la corte que la demandante como dueña de los predios inferiores, está obligada a permitirlas correr por los mismos, sin perjuicio del derecho que pueda tener a exigir resarcimiento de daños y perjuicios por dicho servicio. 4 Manresa, 681."

La parte demandante y apelante sostiene que la corte erró al concluir que la prueba demostró la constitución de la servidumbre por parte del causante de la demandante que ésta viene obligada a respetar y al aplicar al caso el artículo 559 del Código Civil Revisado en vez del 524 del propio cuerpo legal.

Tras un estudio cuidadoso de los autos y de los alegatos hemos llegado al convencimiento de que la sentencia recurrida debe revocarse.

Ni en el registro, ni en los títulos de adquisición, ni en documento privado alguno existe la más leve prueba de la constitución de la servidumbre de que se trata sobre los solares de la demandante.

Es cierto que todos los solares pertenecieron a una sola persona, el padre de la demandante, constituyendo una finca rústica a orillas del pueblo de Río Piedras. Es cierto que el dueño de la finca la dividió en solares que vendió a diversas personas. Y puede admitirse como cierto también que las aguas pluviales siguiendo su curso natural pasaban por las porciones de terreno pertenecientes hoy a la demandante después de pasar por las porciones de terreno pertenecientes hoy al demandado hasta llegar a la "Quebrada de los Muertos", por encontrarse las primeras un poco más bajas que las segundas.

Si del curso de las aguas pluviales solamente se tratara sin que la topografía del terreno hubiera sido variada, aplicable sería para regular el caso el artículo 488 del Código Civil, ed. 1930, que es el 559 del Código Civil Revisado y el 552 del Código Civil Español, y que dice:

"Los predios inferiores están sujetos a recibir las aguas que naturalmente y sin obra del hombre descienden de los predios superiores, así como la tierra o piedra que arrastran en su curso.

"Ni el dueño del predio inferior puede hacer obras que impidan esta servidumbre, ni el del superior obras que la agraven."

Pero la situación varió y con ella la ley reguladora de la misma. La finca se dividió en solares. Se trazaron y construyeron calles. Dos de esos solares pertenecen hoy al demandado a título de compra, y otros dos a la demandante a título de herencia. Levantó en sus solares el demandado no sólo la fábrica de hielo, si que el garage y el establo de que habla la demanda y puso de manifiesto la prueba, dando salida a sus aguas naturales y artificiales por el zanjón que cruza los solares de la demandante. Esas aguas no son las que tuvo en mente el legislador al decretar el artículo 488.

Y que así lo entendió desde un principio la propia parte demandada lo revela su alegación de un contrato específico sobre el particular celebrado entre el causante de la demandante y el demandado, obligatorio en tal virtud para la de-

mandante, y su actitud en el juicio pretendiendo probar la existencia de dicho contrato.

Hemos analizado esa prueba y es a nuestro juicio insuficiente. Ya hemos dicho que nada consta del registro, ni de las escrituras de adquisición de los solares. Toda la evidencia aportada fué oral en relación con cierto pacto verbal que se dijo celebrado entre el demandado y un hijo del causante de la demandante. De modo persistente la demandante se opuso a la admisión de dicha evidencia, pero no nos detendremos a estudiar y a resolver si tuvo o no razón en su actitud porque estamos convencidos de la insuficiencia de la misma.

Tanto el padre de la demandante que vendió al demandado los solares como su hijo varón que se dice que estaba encargado de la administración de sus bienes, habían fallecido a la fecha del juicio. El contrato verbal consintiendo en la servidumbre de desagüe instalada la fábrica, no se dice celebrado directamente con el padre, sino por medio del hijo administrador, sin que se presentara evidencia de clase alguna con respecto a que el hijo tuviera poder del padre, fuera del que pudiera estar comprendido en el general de administración. Siendo ello así ¿qué fuerza puede darse a un contrato semejante, aun suponiendo que realmente se hubiera demostrado su existencia? La constitución de una servidumbre es un acto de dominio que sólo puede realizarse válidamente por el dueño o por su apoderado debidamente autorizado. No se demostró qué clase de poder para administrar tenía el hijo, pero suponiendo que fuera el más extenso que pueda imaginarse, no cabe concluir que incluyera la constitución de servidumbres.

En tal virtud, como el derecho que pudiera basarse en la unidad previa de los solares y en la situación respectiva de los mismos de acuerdo con lo dispuesto en el artículo 488 del Código Civil, ed. 1930, no es bastante, y como no se demostró la existencia de contrato válido alguno celebrado entre las partes para dar salida a las aguas y otras substancias

arrastradas por ellas procedentes de la fábrica de hielo, garage y establo construído por el demandado en sus solares, es necesario reconocer que asiste la razón a la demandante para pedir el cese de la servidumbre.

Su mera tolerancia al permitir por varios años la existencia de zanjón semejante, tampoco es fuente de derechos definitivos para el demandado. Su actitud se explica. Mientras no necesitó de sus solares y éstos se encontraban cubiertos de vegetación, el zanjón permaneció ignorado. Fué al decidirse a fabricar y al acondicionar sus solares para ello que apareció en toda su plenitud con sus bordes negruzcos la zanja conductora de todas las aguas impuras de los solares del demandado.

No hemos encontrado precepto alguno de ley que regule exactamente la situación. Se sugiere por la propia parte apelante el artículo 524 del Código Civil, ed 1930, que dice:

"Cuando el corral o patio de una casa se halle enclavado entre otros, y no sea posible dar salida por la misma casa a las aguas pluviales que en él se recojan, podrá exigirse el establecimiento de la servidumbre de desagüe, dando paso a las aguas por el punto de los predios contiguos en que sea más fácil la salida, y estableciéndose el conducto de desagüe en la forma que menos perjuicio ocasione al predio sirviente, previa la indemnización que corresponda."

No hay duda de que ese artículo proporciona a las partes un medio justo y fácil para dirimir el conflicto entre ellas existente pero no nos sentimos justificados para decidir el litigio aplicándolo porque el precepto únicamente se refiere a las aguas pluviales y aquí están envueltas otras aguas además. *En tal virtud nuestra sentencia deberá limitarse a declarar con lugar el recurso revocando la apelada y decretando el cese de la servidumbre en la forma que pide la demandante en su demanda, sin especial condenación de costas.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.