ERNESTO REYES ESTRELLA, demandante y recurrido, *v.* LUCIANO HERNÁNDEZ, demandado y recurrente.

*Número:* R-68-203     *Resuelto:* 6 de febrero de 1970

*Harry B. Llenza,* abogado del recurrente; *Pedro N. Ortiz* abogado del recurrido.

PER CURIAM: La sentencia cuya revisión se interesa decreta el cese de "la servidumbre . . . respecto a las aguas pluviales que pasan por encima de [un] tubo y que corren y surgen de las edificaciones del demandado derramándose en su predio y a las filtraciones de aguas sucias que salen de los pozos sépticos cuando se llenan; y sin lugar la demanda respecto a lo solicitado por la demandante relativo a el [*sic*] agua pluvial que corre por los tubos existentes en la colindancia del demandado con la Carretera núm. 3, '65 de Infantería' ."

Conforme a las determinaciones de hechos([1]) y a la prueba practicada, la posición física de la finca del de-

---

([1])"1. El demandante es dueño de un predio de terreno de 5 cuerdas en el Barrio Jiménez de Río Grande, el cual por el Este colinda con una parcela de terreno del demandado. Ambos predios colindan por el Sur con la Carretera Estatal núm. 3, '65 de Infantería'.

"2. La carretera '65 de Infantería' está situada a mayor altura que los predios del demandante y el demandado. A su vez el predio del demandante queda más bajo que la finca del demandado, recibiendo ambos las aguas naturales de lluvia de la Carretera. Las aguas pasan al predio del demandante a través de la finca del demandado.

"3. Al terminarse la construcción de la carretera '65 de Infantería' se construyó por el Departamento de Obras Públicas una cuneta o zanja en su colindancia con la finca del demandado. Las aguas que discurrían por esa cuneta, derramaban en parte hacia el Oeste y en otra parte hacia el Este. Esto es así a pesar de que la carretera en esa parte tiene una pequeña inclinación de un 1% hacia el Este, por razón de que el Departamento de Obras Públicas de Puerto Rico, para proteger el talud de la Carretera dispuso que las aguas de esa cuneta discurrieran en ambas direcciones, así las que discurren hacia el Oeste derraman en la finca del de-

mandante recurrido como predio inferior es causa de que reciba las aguas pluviales que se deslizan de la Carretera Estatal núm. 3 y otras aguas que se derraman de ciertas edificaciones construidas por el demandado recurrente en su finca que descienden hasta la propiedad del demandante. En

mandante por ser el predio inferior. El perito Ingeniero Rafael A. Domenech, explicó esta situación en una forma clara y convincente.

"4. El demandado luego de haber rellenado el frente de su finca que tiene acceso a la Carretera '65 de Infantería', solicitó el permiso correspondiente a la Junta de Planificación para construir un garage de gasolina. Este le fue concedido a condición de que colocara un tubo de 24" de diámetro en la cuneta antes mencionada. La colocación de este tubo no aumentó el volumen de aguas pluviales que discurrían por la cuneta hacia el predio del demandante, por el contrario lo disminuyó. La razón es obvia. La carretera al centro forma un lomo por tener un 2% de declive hacia ambos lados. Antes de colocarse el tubo, las aguas del lado Norte del lomo de la carretera derramaban en la cuneta y por ésta seguía hacia el predio del demandante. Ahora con el tubo colocado en la cuneta esas mismas aguas pasan por encima del tubo derramándose hacia el predio del demandado. Así por el tubo sólo pasan las aguas que recoge antes de llegar al frente del garage.

"5. Además, en ese sector, a todo lo largo de la parte Sur de la '65 de Infantería', existe una zona montañosa, de las cuales descienden grandes cantidades de agua en las épocas de lluvia en dirección Norte, o sea, hacia la '65 de Infantería'. Al llegar aquí pasan a través de 3 alcantarillas, pasando por una finca de la familia Guzmán, situada hacia el Oeste de la finca del demandante. Esas aguas continúan hacia la finca del demandante donde desembocan por ser éste el predio más bajo, y así el inferior.

"6. Los propios testigos del demandante aceptaron que la finca del demandante siempre, antes y después de construirse la carretera, ha sido un terreno húmedo y más bajo que el del demandado. Cerca de la colindancia con la finca del demandado, está situada la parte más baja del predio del demandante. Allí es donde se estancan las aguas. El paso continuo y la presencia del ganado del propio demandante por ese sitio forma un fanguero que produce parte de la pestilencia de que él se queja.

"7. El demandado dentro de su finca y a una distancia de 40 pies de la colindancia de la del demandante construyó dos pozos sépticos para garage. Luego para el restaurante construyó otros dos como a 80 pies de dicha colindancia. Allí el terreno no es filtrante ya que es uno compacto. En su estación de gasolina no se ofrece el servicio de lavado de carros. Los pozos sépticos tienen cada uno una tapa de concreto y aunque el que se construyó para el restaurante se ha llenado con frecuencia y en innumerables ocasiones durante cada año, nunca se ha desbordado por dicha tapa. Cuando los pozos se llenan el agua no baja y entonces los inodoros se desbordan en el piso del cuarto donde están instalados. Sólo cuando el demandante se

cuanto a las aguas pluviales que descienden por sí mismas de la carretera es claro que el predio del demandante está obligado a recibirlas—tanto las que discurren por la cuneta como las que pasan sobre el tubo y penetran a la finca del demandado desde donde luego se deslizan a la del demandante—por tratarse de aguas que descienden naturalmente de predios superiores, sin que pueda afirmarse que la actuación del demandado recurrente al colocar un tubo en la cuneta que separa la carretera de ambos predios para darle acceso a su parcela constituya una agravación de la servidumbre, por no aumentarse con ello el caudal de las aguas recibidas. Art. 488 del Código Civil, 31 L.P.R.A. sec. 1711; *cf. Ramos v. Quiñones,* 55 D.P.R. 924 (1940); *González v. Calderón,*

---

ha querellado al demandado, éste ha ordenado la limpieza de los pozos, excepto en los últimos meses que lo ha hecho con más frecuencia y sin tal requerimiento.

"8. El Tribunal por el resultado de la prueba ha quedado convencido de que esos pozos sépticos cuando se llenan en algunas ocasiones han filtrado hacia la finca del demandante. En este aspecto nos merece crédito el testimonio del Sr. Esteban Berríos Morales, investigador en el Departamento de Agricultura y del Sr. Carmelo Rivera Esquilín, inspector de Saneamiento I de Río Grande, que son personas desinteresadas y que examinaron el sitio. Estas filtraciones humedecen más el terreno del demandante incrementando el fango y la pestilencia natural que producen la presencia y las pisadas de ganado en dicho sitio. Debemos señalar que no obstante ser el terreno en ese sector compacto, al demandado rellenar en su predio, y específicamente en el sitio donde están las construcciones, hizo factible que al llenarse los pozos sépticos ocurrieran filtraciones por aquellas capas de tierra más altas que fueron puestas como relleno o removidas al construir los mismos. La parte demandante no probó daño alguno sufrido."

Y en las conclusiones de derecho se incluyen determinaciones de hechos:

"Claramente en este caso la topografía del terreno del demandado cambió al rellenar su finca en la parte que colinda con la carretera núm. 3 y al construir un garage y un restaurante.

"      .      .      .      .      .      .      .      .

"Respecto a las aguas que van por la zanja hecha por el Gobierno al construir la mencionada carretera la situación es distinta. La misma está en terreno del Gobierno y el demandado lo que hizo fue taparla según se lo requirió este último. Aquí el Estado tampoco es parte. Nada hay en la prueba que por esa zanja discurra agua que no sea la pluvial, así en nada altera o perjudica al demandante."

51 D.P.R. 152 (1937). Manresa, *Comentarios al Código Civil Español* (5a. ed., 1931), t. IV, pág. 624 *et seq.;* Puig Brutau, *Fundamentos de Derecho Civil,* t. III, págs. 420–421. En cuanto a las aguas sobrantes procedentes de las utilizadas en la estación de servicio a automóviles y el restaurant edificados por el demandado recurrente, llamadas "aguas sucias", Manresa, *op. cit.,* pág. 626, igualmente es claro que su decurso hacia el predio del demandante se produce por obra del hombre, [2] y aquél no está obligado a recibirlas, en ausencia de una servidumbre debidamente constituida. En esta última situación ya los predios no se encuentran en su condición original y la variación topográfica excluye la llamada servidumbre natural de aguas.

Sobre las filtraciones de los pozos sépticos, valga decir que no se trata estrictamente del establecimiento de una servidumbre. [3] Esta prueba se produjo para sustanciar la causa de acción en daños y perjuicios que fue desestimada.

---

[2] Para construir las edificaciones el demandado realizó cierta labor de relleno en su finca. Aunque el recurrente ha insistido repetidamente en que no hay prueba sobre tal hecho, un examen del récord desvirtúa esta apreciación. (T.E. págs. 37, 42, 98.)

Borrel y Soler, *Derecho Civil Español,* t. 2o., pág. 482, indica que esta servidumbre es de carácter rústico y se refiere especialmente a "las aguas que corren accidentalmente por efecto de lluvias copiosas y lo confirma al decir que con ellas el dueño del predio inferior debe recibir la tierra y piedra que arrastran las aguas en su curso".

[3] Todo cuanto la prueba demuestra es que cuando los pozos sépticos se llenan no ocurren desbordamientos por sus tapas, sino por las instalaciones sanitarias, y unas pequeñas filtraciones que por la situación de los predios se derraman hasta el del demandante. Esta situación infrecuente se corrige por el demandado mediante la limpieza periódica de los pozos.

Al concluir la presentación de la prueba en la vista celebrada ante el tribunal de instancia el juez a quo expresó:

"El caso es completamente claro, sencillo. Aquí no hay prueba de ninguna especie que le merezca crédito al Tribunal indicativa de que la parte demandada ha tratado de imponer una servidumbre de aguas a la parte, al predio de la parte demandante. En igual forma no hay prueba de que haya ninguna servidumbre, no habiendo prueba de daños; *específicamente hay prueba de una filtración que pudo haber ocurrido de agua,* bien sea, del garage, por un solo testimonio al cual el Tribunal, por ser uno

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 19 de junio de 1968, para limitar el pronunciamiento sobre cese de la servidumbre únicamente a las aguas sobrantes procedentes de las edificaciones enclavadas en la finca del demandado recurrente, y así modificada, se confirmará.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.

---

sólo, entiende que no le aplica la generalidad de cuando *esos pozos se han llenado y eso tampoco sería servidumbre,* sino la situación natural del terreno."