ROA, APELADA, *v.* PUIG ET AL., APELANTES.

APELACIÓN procedente de la Corte de Distrito de San Juan, Scción 2ª.

No. 911.—Resuelto en abril 18, 1913.

DAÑOS Y PERJUICIOS—EDIFICIO RUINOSO—FUERZA MAYOR.—No puede atribuirse a fuerza mayor la caída de una viga del techo de una casa debida a la falta de reparaciones necesarias y a la acción de las lluvias y del clima propio de los trópicos.

ID.—ESTADO RUINOSO DE UN TECHO—NOTIFICACIÓN AL DUEÑO.—La ley no exige que el arrendatario de una casa notifique al dueño el mal estado de la misma, sobre todo cuando por una simple inspección no puede apreciarse dicho estado.

ID.—ACCIDENTE ANTERIOR—PRUEBAS.—En una acción de daños y perjuicios por la caída de una viga del techo de una casa, el tribunal sentenciador puede tomar en consideración el hecho de haber ocurrido otro accidente seis o siete meses antes, para apreciar que el dueño ha debido tenerlo en cuenta como un indicio de que la casa estaba en mal estado y necesitaba reparaciones.

ID.—SUSTO—MUJER EN CINTA—ABORTO.—El que con actos negligentes le causa a una mujer en cinta un susto de tal naturaleza que trae como consecuencia próxima y directa su aborto, es responsable en una acción de daños y perjuicios de los dolores físicos y de los sufrimientos derivados directamente

de sus actos, aun cuando dicha mujer no hubiera recibido lesión personal alguna.

ID.—SUSTO—MUJER EN CINTA—ABORTO—CAUSA REMOTA.—Cuando una mujer en cinta aborta algún tiempo después de la caída de una viga del techo de la casa en que vive, porque según ella al sentir el ruido se alarmó temiendo no por su vida propia, sino por la de una hija que se encontraba en otro sitio de la casa, no puede decirse que existe la relación de causa y efecto directo e inmediato entre la caída de la viga y el aborto, y el dueño de la casa no es responsable de los gastos y sufrimientos causados por dicho aborto.

ID.—DAÑOS CAUSADOS (ACTUAL DAMAGES)—SU DETERMINACIÓN—SU IMPORTE.— El importe de la indemnización en un caso de esta naturaleza debe ser proporcional a las lesiones físicas y a los perjuicios materiales y ajustarse al montante probado.

ID.—HONORARIOS MÉDICOS—ELEMENTOS QUE DEBEN PROBARSE.—En casos de indemnización por lesiones físicas, cuando una de las partidas reclamadas es por concepto de honorarios médicos, es necesario probar que el demandante pagó en realidad dicha cuenta, o que está legalmente obligado a pagarla, y que su importe es verdadero, justo y equitativo, y que la asistencia médica era necesaria por razón de las lesiones sufridas.

Los hechos están expresados en la opinión.

Abogados de Concepción Puig: *Sres. Eduardo Acuña* y *Adrián Agosto.*

Abogados de la apelada: *Sres. Rafael López Landrón* y *Hugh R. Francis.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

La apelante en este pleito, Doña Concepción Puig, es dueña de la casa Número 9 de la calle de San Justo, de la ciudad de San Juan. Hace algunos años que ella alquiló la expresada casa a Manuel Soto, quien tenía en su servicio a la apelada, Elisa Roa. Uno de los demandados, Don Arturo Fernández Sanjurjo, es el administrador de la dueña de la casa y no tiene otro interés en el asunto, habiendo sido absuelto por la sentencia de la corte inferior, sin que se interpusiera recurso de apelación contra esa resolución.

La presente acción se originó por virtud de una demanda que fué presentada por Elisa Roa contra Concepción Puig y Arturo Fernández Sanjurjo en reclamación de una suma de cinco mil ($5,000) dólares por daños y perjuicios, porque, siendo la demandada Doña Concepción Puig dueña de la

casa Número 9 de la calle de San Justo de esta ciudad y
el otro demandado Fernández Sanjurjo su administrador,
quien tenía la obligación de cobrar las rentas de dicha casa
y de vigilar que la casa estuviera en buen estado, el expre-
sado Fernández Sanjurjo sabiendo que los techos de la men-
cionada casa se encontraban en completo estado de ruina
y debido a la negligencia de,los expresados demandados en
hacer reparaciones en la misma, el día 14 de abril de 1911
se desplomó una parte del techo de una de las habitaciones
de la mencionada casa, produciendo tal ruido que ocasionó
a Elisa Roa, que en aquel entonces vivía en la referida casa,
un susto de tal naturaleza que le produjo un aborto de una
niña y los consiguientes padecimientos físicos y mentales.

Los demandados al contestar la demanda negaron todos
los hechos alegados en la misma, y el juicio de este caso
tuvo lugar en abril de 1912. En 10 de junio siguiente se
dictó sentencia contra la demandada Concepción Puig por
la suma de cinco mil ($5,000) dólares, o sea la cantidad que
había sido reclamada, con las costas, contra cuya sentencia
fué debidamente interpuesta esta apelación. El otro deman-
dado quedó absuelto de toda responsabilidad. El abogado de
los apelantes alega que se han cometido los siguientes
errores por la corte sentenciadora:

1. La corte cometió error al estimar como resultado gene-
ral de la prueba presentada en el juicio, que la demandada
Concepción Puig no ejecutó en la casa de.la calle de San Justo
No. 9, las obras necesarias de reparación, para evitar la caída
del techo de una de las habitaciones de la misma,.ocurrida el
14 de abril de 1911.

2. La corte cometió error al apreciar en comprobación
de la negligencia del demandado,;que anteriormente al día
14 de abril de 1911, o sea allá para el mes de septiembre.de
1910 tuvo.lugar también el desprendimiento de otra viga en
el techo de esa misma habitación.

3. La corte erró y cometió un error sustancial y funda-
mental, al apreciar, en relación con el hecho ocurrido en el

caso en cuestión en el mes de septiembre de 1910, que hubo desprendimiento de otra viga, y asumiendo a la vez y simultáneamente que dicha viga había sido sostenida por medio de otra viga que se colocó en el sitio de la misma y que evitó su caída.

4. La corte cometió error al apreciar que aun cuando la demandada y como consecuencia del accidente ocurrido en septiembre de 1910, practicó un reconocimiento del resto de la viguería para conocer por sí misma su estado, tal reconocimiento y revisión no se llevaron a cabo con el esmero y cuidado requeridos por las circunstancias, ni se practicaron por personas capaces para emitir una opinión acerca de las obras que debieran practicarse.

5. La corte cometió error al estimar probado por el resultado de la evidencia, que la caída de la viga ocurrida en 14 de abril de 1911, había ocasionado a la demandante un gran susto, y que a causa del mismo le sobrevino un aborto y un estado de melancolía y depresión nerviosa que afectó a su salud física y mental.

6. La corte cometió error al apreciar en el presente caso la responsabilidad de daños y perjuicios sancionada por los artículos 396, 1803 y 1808 del Código Civil Revisado; en razón a no concurrir en este caso ninguna relación inmediata y natural de causa y efecto entre el acto de negligencia y el daño que se dice ha originado, ni ninguno de los elementos esenciales que integran dichos artículos.

7. La corte cometió error al conceder sin especificación ni comprobación suficiente la cantidad de cinco mil ($5,000) dólares como resarcimiento de los daños sufridos por la demandante.

Examinemos esos errores.   Se ha alegado y probado que el día 14 de abril de 1911 se cayó una viga de una de las habitaciones ocupadas por la demandante, produciendo un ruido de consideración; y hacia el día 22 del propio mes la demandante, que en esa epoca se encontraba en cinta, sufrió un aborto de una niña de seis meses, o sea fuera de

tiempo, y que se hizo necesario la asistencia médica y luego una operación quirúrgica, habiendo además influido éste en el carácter de la demandante, todo lo cual se alegó que fué ocasionado por la afección nerviosa producida por el susto que recibió con motivo de la caída de la viga.

La primera cuestión comprendida en esta apelación y que debemos considerar es una de hecho, que habrá de resolverse, tomando en consideración la prueba contenida en los autos, a saber: ¿Constituyó la caída de la viga la causa próxima del daño ocasionado a la demandante? o, en otras palabras, ¿fué el aborto que le sobrevino a la demandante demasiado remoto para poder ser imputado a la negligencia de la demandada? La corte sentenciadora en su opinión declaró sustancialmente como probados los siguientes hechos.

1. Que la demandante ha probado por la prueba presentada en el juicio, que la demandada Concepción Puig, que era dueña de la casa Número 9 de la calle de San Justo, no adoptó las medidas necesarias para evitar la caída del techo de una de las habitaciones, que tuvo lugar el día 14 de abril de 1911; y para justificar la negligencia de dicha demandada se probó además que con anterioridad a ese día había tenido lugar el desprendimiento de una viga en la misma habitación que fué entonces sostenida poniendo y fijando a la misma otra viga, evitando así su caída; que no se hizo en ese departamento ningún examen de las condiciones del resto de la viguería, lo que debió haberse hecho por un cuidadoso y diligente propietario, con el fin de cerciorarse del estado en que se encontraban dichas vigas, pues aun cuando aparece de la evidencia presentada por la demandada, que se hizo dicho reconocimiento, éste no fué llevado a cabo con todo el esmero y cuidado que las circunstancias exigían, y además, que se hizo por persona que no tenía la competencia necesaria para conocer el verdadero estado de aquella construcción, para dar por consiguiente una opinión satisfactoria de las obras que debieron ejecutarse o de las medidas

de precaución que debieron adoptarse para evitar el desgraciado suceso que poco tiempo después ocurrió.

2. Que no puede ponerse en duda la negligencia y falta de cuidado del propietario de la casa que, a pesar del hecho de haber sido avisado ya por un accidente de la misma naturaleza, dejó de tomar las medidas necesarias que la ley exige de modo expreso en el Código Civil, tendentes a evitar que el hecho se repitiera. Si el propietario no hubiera sido negligente y descuidado, y hubiera previsto lo que por su abandono podía acontecer, seguramente el daño no hubiera ocurrido. Y no puede alegarse aquí nada que demuestre que las personas que viven en dicha casa dejaran de dar al propietario los avisos necesarios en cuanto al particular, pues de la prueba aportada al juicio resultó probado qué el mal estado de dichas vigas no era cosa perceptible a simple vista; o, como ha dicho un eminente comentarista de nuestro Código, sería contrario a toda noción de justicia excluir de esta responsabilidad al dueño, simplemente por el hecho de que no fué advertido a su debido tiempo por una tercera persona del riesgo que ofrecía la caída del techo, cuando, según la ley, él estaba en la obligación de hacer las obras necesarias de reparación o destruir el mismo, precisamente para que ese peligro inminente no se convirtiera en un grave accidente en perjuicio de otras personas.

3. Que quedó probado suficientemente en el juicio que la demandante en este pleito, Señora Roa, se encontraba en estado de embarazo cuando ocurrió el accidente; que ella sufrió un susto muy grande por creer que uno de sus hijos que estaba en la habitación donde tuvo lugar el accidente, había perecido; que a consecuencia de ese susto le sobrevino un aborto que fué originado y causado por el susto que le ocasionó dicho accidente, que después del aborto se hizo necesario hacer una operación quirúrgica a dicha señora; que como resultado de dicho susto se produjo en la paciente un estado de melancolía y depresión nerviosa que ha determinado perjuicios en su salud física y mental, de lo que

aún está sufriendo, aunque no puede precisarse su duración; que esa afección nerviosa ha producido un cambio radical en el temperamento y carácter de la Señora Roa, que está ahora mal humorada, olvidadiza e irascible, lo contrario de antes que era amable y cariñosa, y a tal extremo ha llegado el cambio producido en su carácter que, según las manifestaciones hechas por uno de los testigos ligado a ella por la relación de amo y sirviente, declaró que "después del accidente nadie podía soportarla."

Alega la apelante que estas conclusiones de hecho no están sostenidas por la prueba que fué presentada en el juicio y que consta en la relación de hechos. Debemos, pues, considerar los autos en cuanto a este particular. Tal vez sería lo mismo examinar estas cuestiones por el orden en que aparecen en los diferentes señalamientos de error a que ya hemos hecho referencia.

(a) El primer señalamiento de error se refiere a la conclusión a que ha llegado la corte sentenciadora con respecto a la negligencia de la apelante, en no ejecutar las obras necesarias de reparación en la casa ocupada por la apelada, con el fin de impedir la caída de la viga de dicha casa que tuvo lugar el día 14 de abril de 1911. Los autos demuestran claramente que no se hicieron las obras necesarias e indican suficientemente que fué por esto que la viga se desprendió y probablemente debido a las continuas lluvias se cayó de su sitio en el techo. El estatuto, artículo 398 del Código Civil, exime al dueño de responsabilidad por tales accidentes en los casos de fuerza mayor, pero no creemos que este caso esté comprendido en esa excepción. Si este accidente hubiera sido causado por un terremoto o por un rayo u otro fenómeno natural que raras veces ocurre, entonces la apelante hubiera quedado exenta de responsabilidad. Pero, por los resultados naturales que lleva consigo el tiempo de los trópicos a los cuales estamos sometidos en este clima, no puede hacerse excepción, y resulta por tanto la responsabilidad del dueño. Tampoco puede alegar la pro-

pietaria que no fué notificada por· el inquilino de las condiciones en que se encontraba la·casa. La ley no exige tal notificación y en el presente caso el mal estado de las vigas no era perceptible a simple vista._ El apoderado, ·teniendo en cuenta el incidente ocurrido en septiembre del año anterior, debió estar sobre· aviso y haber· ordenado oportunamente un reconocimiento en forma de la viguería del techo para llevar a cabo las reparaciones que las circunstancias exigieran, librando así a su principal de cualquier imputación de culpa o negligencia. Por consiguiente, debemos llegar a la conclusión de que el primer pronunciamiento de error que ha sido presentado por la apelante carece de fundamento.

· (*b*) El segundo y tercer error que han sido alegados por el abogado de la apelante se refieren a que la corte sentenciadora, al llegar a la cuestión relativa a la negligencia de la dueña, tomó en consideración el hecho de que con anterioridad al día 14 de abril de 1911, o sea el día en que se alega que se cayó la viga que produjo el daño, había ocurrido el desprendimiento de otra viga en el techo de la misma habitación; que esto ocurrió en el mes de septiembre de 1910. Se ha discutido algo la cuestión referente a si estaban o nó colocadas las dos vigas en la misma habitación, pero resulta claro que si no era así estaban en otras habitaciones contiguas, de modo que esta cuestión no es esencial. El hecho relacionado con· el primer accidente· que tuvo lugar seis o siete meses antes ha sido considerado por la corte sentenciadora simplemente como un detalle que demuestra que la demandada debía haber estado preparada y como una especie de aviso o indicación de que la casa era vieja, en mal estado y necesitaba ser atendida por su dueño, o el administrador facultado para ello. Por tanto creemos que el accidente que luvo lugar en septiembre de 1910, fué una cuestión que pudo tomarla en consideración la corte sentenciadora al dictar su sentencia.

(*c*) El cuarto error que ha sido alegado por la apelante

se refiere al reconocimiento hecho por los agentes de la dueña, con motivo del accidente ocurrido en septiembre; declarando la corte sentenciadora que dicho reconocimiento e inspección no fueron practicados con la debida diligencia y cuidado que exigían las circunstancias del caso, ni se hicieron por personas competentes para llevar a cabo dicho trabajo y poder dar una opinión con respecto a las reparaciones que había necesidad de hacer en la casa. Creemos que la corte sentenciadora hizo un resumen correcto de la prueba en cuanto a este particular. Se hicieron reconocimientos poco tiempo después de haber ocurrido el accidente en septiembre, pero según aparece de los autos no se efectuaron tan completamente como debió haberse hecho y fueron efectuados únicamente por simples operarios que no mostraron tener ningún conocimiento especial en el asunto, pudiendo luego verse que cuando la casa había sido entregada por el inquilino fué necesario hacer reparaciones en toda la viguería, lo que se llevó a cabo por orden del administrador de la apelante algunos meses después. Las declaraciones de algunos de los testigos en cuanto a las condiciones de las vigas, son muy terminantes con respecto al hecho de que las mismas estaban enteramente podridas y no servían para el uso a que se les destinaba. No podemos considerar que la conclusión a que llegó la corte en cuanto a este punto haya sido incorrecta.

(*d*) El quinto y sexto señalamientos de error se refieren a la conclusión a que llegó la corte sentenciadora declarando que la caída de la viga que tuvo lugar el Viernes Santo de 1911 causó un gran susto a la demandante, y que a causa del mismo le sobrevino un aborto pocos días después y el consiguiente estado de melancolía y depresión nerviosa que afectó perjudicialmente a su salud física y mental, y en la aplicación de la ley tal como aparece en los artículos 1803 y 1808 del Código Civil; alegando la apelante que no existe en este caso ninguna relación inmediata y natural de causa y efecto entre el acto ilegal de negligencia que ha sido alegado en la de-

manda y el perjuicio que se alega fué causado por el mismo, y niega además la existencia de ninguno de los elementos esenciales constitutivos de daños según se determinan en los estatutos. Es un principio bien establecido que cuando un daño o perjuicio físico, así como un aborto, resulta directamente de un gran susto o conmoción ocasionado por la negligencia del demandado que está en la obligación de tener el cuidado de que el perjudicado no reciba ningún daño, dicho susto o conmoción es un eslabón en la cadena de lo que se presume que constituye la causa, de igual modo que el daño corporal que con iguales resultados pudiera sobrevenir de la misma. *Pankopf* v. *Hinkley,* 24 L. R. A., N. S., 1161. Se ha resuelto en muchos casos que el mero susto originado por la negligencia de otra persona sin ninguna consecuencia física no puede constituir la base de una reclamación por daños y perjuicios. Por ejemplo, si una mujer al pasar por el lado de una caldera que contiene plomo derretido le caen cuatro o cinco gotas de dicho metal que salta afuera de la misma y esto le causa una ligera lesión pero un cambio radical en su sistema nervioso, en su salud general, y en sus órganos corporales, dando por resultado tres abortos sucesivos, dichos abortos no fueron la consecuencia ordinaria y natural del accidente por la que puedan reclamarse daños y perjuicios. *Hack* v. *Dady,* 118 N. Y., Supp., 906.

Pero la jurisprudencia aprobada y sostenida ahora generalmente por los principales casos, es la de que aquel que origina un estado nervioso en una mujer en cinta, por ejemplo, entrando ilegalmente en su casa en forma tal que le sobrevenga un aborto, es responsable para con ella por el dolor físico y sufrimiento que reciba como consecuencia directa del acto ilegal, aunque no se le causa ningún daño físico. *Engle* v. *Simmons,* 7 L. R. A. (N. S.), 96.

Igual doctrina se sostiene en los casos de *Simone* v. *Rhode Island Co.,* 9 L. R. A. (N. S.), 740 y *Green* v. *Shoemaker,* 23 L. R. A. (N. S.), 667, pero en todos estos casos el susto que se alega que constituye la causa próxima del accidente, surge del

propio accidente, y al recibirlo directamente dicha persona sin la intervención de otra persona o cosa en el origen del mismo. El caso es distinto cuando el susto de que se queja la demandante se produjo con motivo del daño por parte de alguna tercera persona y no por el daño personal que la propia demandante pudiera recibir. En el presente caso el susto que ha causado el perjuicio del cual la demandante es la supuesta víctima, no fué la causa próxima de dicho daño, puesto que se produjo por medio de una tercera persona, o sea la niña de la demandante, la que al caer la viga que causó el ruido, no se encontraba en la habitación con su madre y el ruido que hizo la caída de la viga no asustó a la demandante, causándole un perjuicio a ella misma, sino que la alarmó en cuanto a la salvación de su niña. La negligencia de la demandada en dejar de hacer las reparaciones en la casa por lo que la viga se cayó, haciendo un ruido que, tomado en relación con la ausencia de la niña de la presencia de su madre, la alarmó a esta última por pensar en su seguridad, proporcionándole esto, por consiguiente, un estado nervioso que dió por resultado un aborto, es un hecho que se relaciona muy remotamente con los perjuicios que se derivaron de la misma para exigir responsabilidad a la dueña de la casa que reside en España, a quien se imputa la negligencia por no hacer las obras necesarias de reparación. *Huston* v. *Borough of Freemansburg,* 3 L. R. A. (N. S.), 49 y nota.

Aunque la prueba con respeto al susto no es tan concluyente como debiera serlo, pues sobre el particular solamente declaró la cocinera de la casa, única testigo que se encontraba presente cuando ocurrió el accidente y que vió a la demandante immediatemente después de haberse caído la viga y las declaraciones prestadas por los médicos que examinaron a la demandante, fueron completamente de referencia en cuanto al susto, podemos admitir que ella realmente sufrió un susto en vista del peligro de su niña y nó por el peligro que había para ella misma y que la caída de la viga fué la causa remota de dicho susto; pero la inmediata y única relación de

causa y efecto entre la caída de la·viga y el aborto que sobre-
vino a la demandante, no son hechos que están completamente
relacionados para fundar en ellos responsabilidad por parte de
la demandada o sea la dueña de la casa.   No vemos entre la
caída de la viga y el aborto la existencia indiscutible de una
relación de causa y efecto que·ligue por modo evidente ambos
extremos, requisito ·indispensable para exigir responsabilidad
a la demandada. · Dado el tiempo transcurrido desde la caída
de la viga hasta que· ocurrió el aborto de la demandante, no
estamos convencidos de que el aborto fuera consecuencia del
susto, y no debido a cualquier otro accidente natural o for-
tuito independiente de la caída de la viga.

(*e*) El séptimo error que·ha sido alegado por la apelante
se refiere a la· cuantía de los perjuicios que estimó la corte
sentenciadora habían sido causados, a sea la suma de cinco
mil dólares ($5,000), que constituye la cantidad total que ha
sido reclamada por la demandante en su demanda.   Con res-
pecto a la cuantía de los daños reales, debe notarse que los
mismos se conceden como compensación a la demandante por
cualquier perjuicio que realmente hubiera sufrido por los ac-
tos de negligencia del demandado; y deben los mismos estar
enteramente ·en proporción con los perjuicios que la deman-
dante sufrió en su persona o propiedad y no deberán consistir
en una suma mayor o menor de la que ha sido probada.   1
Street on Foundations· of Legal Liability, 479; Greenleaf on
Evidence (14th Ed.), sec. 253.   La suma reclamada por asis-
tencia médica en este caso es notablemente crecida, pues as-
ciende a $1,800.   La demandante se encontraba enferma, según
aparece de la prueba, desde hacía unos tres meses y estuvieron
asistiéndola por lo ʼmenos parte de ʼese tiempo, dos médicos.
La prueba no revela que estos honorarios que han sido recla-
mados por los médicos se hubieran pagado en realidad, pero
puede deducirse en un sentido general, que esa es la reclama-
ción hecha por la demandante.   En casos de daños y perjuicios
por lesiones corporales, cuando se incluye en los mismos la
partida correspondiente a la cuenta de médicos es necesario

probar: Primero, el verdadero pago que ha hecho el deman-
dante de las cuentas o que el demandante está legalmente obli-
gado a pagar las mismas, y que la suma es razonable, justa, y
correcta; y, segunda, que la asistencia médica fué necesaria
debido a los perjuicios sufridos. *MacDonald* v. *I. C. R. Co.*, 55
N. W. Rep., 102; *Omaha St. R. Co.* v. *Emminger*, 77 N. W.
Rep., 675; *Indianapolis* v. *Gaston*, 58 Ind., 224; *Bowsher* v.
*C. B. & Q. R. Co.*, 84 N. W. Rep., 958; *Abbitt* v. *St. Louis Tr.
Co.*, 79 S. W. Rep., 496; *Beater v. D. L. & W. R. Co.*, 85 N. Y.
Supp., 524; *San Antonio St. Ry. Co.* v. *Muth*, 7 Tx. Civ. App.,
443. 13 Cyc., 140. 1 Street on Foundation of Legal Liability,
149–159.

También reclama la demandante una gran suma por ciertos
otros alimentos de clase superior y por *champagne* que se
alega fué necesario comprar, debido a su condición delicada.
También hay prueba tendente a demostrar que dichos alimen-
tos no fueron necesarios y que el *champagne* era perjudicial
en esos caso. Examinando toda la prueba en conjunto, cree-
mos que la sentencia es completamente excesiva, aun cuando
hubiera sido demostrado debidamente de algún otro modo la
responsabilidad de la demandada.

No habiéndose probado que la causa próxima de los per
juicios que ha sido alegados fuera la negligencia de la deman-
dada, la sentencia dictada por la corte de distrito el día 10 de
junio de 1912, debe revocarse y dictarse otra por este tribunal
a favor de la demandada, sin especial condenación de costas.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asocia-
dos Wolf, del Toro y Aldrey.