GERARDO TORRES, demandante y apelante, *v.* RAMÓN FERNÁNDEZ PÉREZ, demandado y apelado.

Núm. 7807.—*Sometido:* Noviembre 9, 1939. *Resuelto:* Abril 18, 1940.

*F. Fernández Cuyar,* abogado del apelante; *Angel A. Vázquez,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Gerardo Torres demandó a Ramón Fernández en reclamación de doce mil ochocientos dólares por daños y perjuicios. Trabada la contienda, fué el pleito a juicio. El trece de mayo de 1938 la corte dictó sentencia declarando la demanda sin lugar con costas pero sin incluir honorarios de abogado

por entender que no hubo temeridad en la prosecución del litigio. El demandante apeló.

Los hechos en que basó su acción se exponen en su demanda, en resumen, como sigue:

El demandante y su esposa con sus tres hijos habitaban uno de los apartamientos de la casa número 37, Calle General Contreras, San Juan, P. R., propiedad del demandado, desde octubre 31, 1934.

El 16 de julio de 1937 al intentar la esposa del demandante subir por una escalera de madera instalada en el patio para beneficio de los inquilinos, el tercer escalón de la misma cedió al peso de su cuerpo, cayendo sobre el piso de concreto del patio y sufriendo la fractura conminuta del fémur izquierdo, y otras severas contusiones.

El accidente se debió a la exclusiva culpa, descuido y omisión del demandado que teniendo previo conocimiento del mal estado de la escalera omitió hacer en ella las necesarias reparaciones. La escalera estaba construída en forma peligrosa debido al ángulo y altura de escalón a escalón. La madera de éstos, especialmente la del tercero, estaba podrida.

Por su contestación aceptó el demandado la existencia de la escalera pero negó que estuviera instalada para beneficio de los inquilinos, alegando que daba acceso a la azotea y no formaba parte del apartamiento, habiéndose construído únicamente para ser usada para reparaciones de la azotea, todo lo cual conocían la señora Ortiz y el demandante, a quienes además prohibió su uso.

Aceptó que en la fecha fijada la Sra. Ortiz intentó subir por la escalera, pero alegó que realizó tal acto a sabiendas de que no podía hacerlo.

Negó la caída de la Sra. Ortiz y sus consecuencias, y negó que en caso de haber ocurrido, se debiera a su culpa y negligencia, debiéndose por el contrario a la culpa y descuido de la Sra. Ortiz.

Negó que tuviera conocimiento del mal estado de la escalera, y alegó que jamás fué notificado de desperfecto alguno en la misma.

Como defensa especial alegó que el demandante "no tiene capacidad legal para demandar como representante de sociedad conyugal alguna, en virtud de que de la faz de la demanda no aparece que el día del accidente reseñado en el hecho 3 de la demanda él estuviera casado con María Luisa Ortiz; que la demanda no aduce hechos suficientes que den derecho al demandante para establecer la demanda de este pleito."

La vista duró dos días, realizándose en otro la inspección ocular.

Pesando la evidencia aportada por ambas partes, en su relación de hechos y opinión, dijo la corte sentenciadora:

"La casa núm. 37 de la calle General Contreras de esta Ciudad, está dividida en tres apartamientos con frente todos a la citada calle. Al fondo de la casa existe un pequeño patio con piso de cemento, al cual tienen acceso el apartamiento del centro y el de la derecha entrando. En este patio existe una escalera de madera que conduce a la azotea de una pequeña construcción de concreto armado o piedra, más baja que el resto de la casa. Sobre esta primera azotea hay otra escalera que conduce a la azotea principal propiamente dicha.

"La casa pertenece en la actualidad y pertenecía el 16 de julio del año pasado al demandado Ramón Fernández, quien a su vez la hubo de Cruz Rivera Meléndez, su anterior dueño. Cuando la propiedad pertenecía a Rivera, el demandante y su familia vinieron a ocupar el apartamiento del centro en concepto de arrendatarios y al adquirirla Fernández continuaron ocupándolo en el mismo concepto, luego de llenar los requisitos de fianza exigidos por el nuevo dueño.

"Desde los tiempos en que Rivera poseía la casa, existía en ella la escalera de madera antes mencionada, y al adquirirla Fernández la dejó en el mismo sitio.

"El 16 de julio del año pasado, la esposa del demandante se dispuso a subir a la azotea con el objeto de tender a secar ciertos trajes de baño de sus niños. En los momentos en que descansaba un pie en el tercer escalón y levantaba el otro para ponerlo en el cuarto, se desprendió un pedazo del borde exterior del tercer escalón, motivando la caída de la señora. Como resultado de la caída sobre

el piso de cemento, sufrió la fractura conminuta del fémur izquierdo inmediatamente por debajo de los procánteres, con desplazamiento de los fragmentos, severas contusiones en el brazo izquierdo y varias otras en distintas partes del cuerpo."

Luego, basándose en la inspección ocular, describe la escalera, así:

". . . . tiene ocho escalones. Su base está empotrada en el piso de concreto del patio, y su parte superior descansa sobre el borde del pretil de la azotea, sin sujeción alguna. Al lado derecho subiendo tiene una baranda que consiste de una alfajía de una pulgada de espesor por tres de ancho, que va de un poste de madera en la base de la escalera a otro similar en el pretil de la azotea. Este pasamanos se mueve fácilmente y no tiene la necesaria resistencia debido a la distancia existente entre uno y otro poste y al espesor de la alfajía. La escalera tiene una inclinación tan fuerte y los escalones son tan estrechos, que no puede bajarse de frente sino de espaldas, como si se tratara de una escalera de mano. La estructura de la escalera es tan deficiente que requiere gran cuidado al colocar el pie en los escalones, pues siendo tan estrechos como son se corre el peligro de descansar el cuerpo sobre la punta del pie y sufrir una caída. En el borde exterior del tercer escalón, equidistante de sus extremos, falta una pequeña faja de madera que mide siete pulgadas de largo por una de ancho. Pudimos observar señales de haber sido partido con un arma cortante el extremo izquierdo del hueco así producido; pero esta circunstancia no arroja ninguna luz sobre el caso, porque si bien el demandante continuó ocupando el apartamiento algún tiempo después del accidente, es también cierto que lo desocupó más tarde volviendo así a la posesión del demandado, sin que podamos determinar si el corte en cuestión fué hecho antes o después del accidente, ni la persona que lo hiciera. Este tercer escalón está algo podrido por debajo hacia el borde exterior, pero cortando una sección longitudinal en el borde del escalón en controversia, pudimos comprobar que aunque la parte inferior estaba podrida, la superior no lo estaba. La base de la escalera está en buen estado y sus escalones incluyendo el tercero no dan la impresión de estar podridos, y en efecto no lo están, excepto la parte inferior del borde de dicho escalón."

■ Dispone entonces de la defensa especial alegada en la contestación declarándola sin lugar por entender que la de-

manda aduce hechos suficientes y que el demandante tiene capacidad para demandar como representante de la sociedad conyugal por los daños y perjuicios sufridos por ésta a virtud del accidente ocurrido a su esposa—lo que es conforme a la repetida jurisprudencia de esta Corte sobre el particular —y entra de lleno en el estudio de los hechos y la ley, como sigue:

"La acción establecida por el demandante surge de los artículos 1444 y 1446 del Código Civil (ed. 1930) que en lo pertinente disponen:

" 'Art. 1444.—El arrendador está obligado:

" '1.— . . . . . . . . .

" '2.—A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.

" '3.— . . . . . . . .

" 'Art. 1446.—Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente.'

"Que la lesionada se cayó de la escalera y sufrió así la fractura del fémur, es un hecho fuera de toda controversia. Discrepan las partes solamente en cuanto a la causa inmediata de la caída, pues mientras la lesionada indica como causa del accidente el haberse roto el escalón, y la estructura peligrosa de la escalera, el demandado la atribuye a haber resbalado al colocar negligentemente el pie en el escalón

"No tenemos evidencia alguna que sostenga la contención del demandado. En cambio, la declaración de la lesionada, el defecto en el borde del escalón, según aparece de las fotografías, de los planos presentados y de la inspección ocular, sostienen la versión de la lesionada, que aceptamos como cierta por no haber sido controvertida ni existir razón o motivo alguno para rechazarla.

"Ahora bien, ¿revela la evidencia que el arrendador tenía conocimiento de que la escalera estaba podrida y por consiguiente requería reparaciones? La prueba no sostiene esa alegación de la demanda."

Analiza los testimonios de la lesionada y del demandado, transcribiendo parte de los mismos, y agrega y concluye:

"Cuando el 19 de abril último tuvimos la oportunidad de examinar la escalera con motivo de la inspección ocular, pudimos observar que no presentaba indicio alguno de estar podrida o de amenazar ruina. Si ésa era la situación el mes pasado, claro está que el día del accidente acaecido a la Sra. Torres, allá por el 16 de julio de 1937, tampoco podía dar señales de necesitar reparaciones y evidentemente cuando ocurrió la caída de la niña varios meses antes del 16 de julio de 1937, muchas menos probabilidades existían de que la Sra. Torres pudiese sospechar siquiera que la escalera necesitase reparaciones. Además, si el demandado a requerimiento de la lesionada hizo reparaciones de relativa importancia, tales como cambio de pisos, etc., muy fácil le hubiera sido cambiar uno o más escalones si se le hubiese pedido y si en efecto hubiera sido necesaria tal reparación. Estas consideraciones, independientemente de las contradicciones, evasivas y vacilaciones de la lesionada al declarar sobre este extremo, nos obligan a dirimir el conflicto de la evidencia a favor del demandado, dándole entero crédito a su declaración y a la de Carmona en lo que a este punto respecta."

Resuelto de tal modo el conflicto de la evidencia, examina la responsabilidad que pudiera recaer sobre el demandado a virtud de la defectuosa construcción de la escalera, y lo exonera de ella, así:

". . . . la escalera existía con sus defectos de construcción no solamente cuando el demandante arrendó el apartamiento a Rivera, el anterior dueño, sino al renovar el contrato con el demandado Sr. Fernández, y siendo ello así, no es éste responsable de tales defectos de construcción que conocía el inquilino al celebrar el contrato y que no obstante conocerlos, aceptó el apartamiento en esas condiciones. A ese efecto dice Manresa comentando el Art. 1554 del Código Civil Español, igual al 1444 del nuestro (ed. 1930):

" 'Lo mismo el que toma fincas en arrendamiento que el que las compra, debe apreciar si le conviene o no, y una vez vistas y convenidos los contratantes, cumple el arrendador con entregar la cosa en el estado en que se hallaba al perfeccionarse el contrato. . . .' 10 Manresa, Código Civil Español (2ª. ed.) 515."

Y continúa diciendo:

"Resulta, pues, evidente, que el demandado no es responsable por los defectos de construcción de la escalera. Veamos si lo es por no haber reparado el escalón.

"Llegamos anteriormente a la conclusión de que el demandado no fué advertido o notificado de la necesidad de reparaciones en la escalera, y que por consiguiente no tenía conocimiento de que ésta estuviese en mal estado. Partiendo de esa premisa, determinaremos si es o no responsable del accidente sufrido por la lesionada. Sostiene el demandante, y a ese efecto cita algunos casos resueltos en distintas jurisdicciones de los Estados Unidos, incluyendo a Louisiana, y el caso de *Roa* v. *Puig et al.*, 19 D.P.R. 386, que el arrendador es responsable del accidente causado por falta de necesarias reparaciones, aunque nada se le haya advertido acerca del particular.

"Rigiéndonos como nos regimos por el Código Civil, debemos recurrir a esa fuente antes que a ninguna otra para determinar si en efecto el demandado es responsable del accidente, no habiendo recibido notificación alguna para que haga reparaciones. Como dijimos anteriormente, el Artículo 1444 del Código Civil (ed. 1930) impone al arrendador la obligación de hacer en la cosa objeto del contrato, durante el arrendamiento, todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada. Pero esta obligación por parte del arrendador está complementada con el deber correlativo del arrendatario expresado en el Art. 1449 del mismo Código, que refiriéndose a las obligaciones del arrendatario dice así:

" 'También está obligado a poner en conocimiento del dueño, con la misma urgencia, la necesidad de todas las reparaciones comprendidas en el número dos del Art. 1444.'

"De manera que el Art. 1449 de modo expreso impone al arrendatario el deber de notificar al arrendador la necesidad de las reparaciones. Es verdad que en el caso de *Roa* v. *Puig,* supra, a manera de *dictum* se sostiene que el propietario no puede alegar que no fué notificado por el inquilino de las condiciones en que se encontraba la cosa arrendada, porque la ley no exige tal notificación; pero como resulta claramente del Art. 1449 en relación con el 1444 del Código Civil, tal *dictum* es erróneo y contrario a los preceptos del Código. . . ."

Sostiene que tanto Manresa como la Enciclopedia Jurídica Española guardan absoluto silencio sobre el particular, y cita de 24 Scaevola, Código Civil, 516, y de 9 Martínez Ruiz, Código Civil, 565, *et seq.,* algunos párrafos que sostienen a su juicio su criterio, y prosigue:

"En el caso de *Roa* v. *Puig,* supra, no era necesario el aviso al dueño o arrendador, porque del mismo aparece que un año antes de la caída de la viga que causó el accidente, se había desprendido otra, de lo cual tuvo conocimiento el arrendador. Claro es, que en tales condiciones el arrendador estaba suficientemente notificado y no tenía necesidad de que el arrendatario le comunicase lo que ya él sabía.

"En el caso de *Miranda* v. *Méndez,* 50 D.P.R. 850, en que estaba envuelta la responsabilidad del arrendador por los perjuicios sufridos por el arrendatario por dejar de hacer las necesarias reparaciones, se demostró plenamente que la demandante había notificado al agente o administrador del arrendador del mal estado en que se hallaba la escalera que motivó el accidente. A ese efecto se dice en la página 855 de la opinión:

" 'La escalera estaba en malas condiciones, la demandante lo notificó al demandado, éste prometió repararla y fué dilatando la reparación.'

"Tanto el caso de *Roa* v. *Puig* como el de *Miranda* v. *Méndez,* son perfectamente distinguibles del que nos ocupa, porque en el primero el arrendador tenía conocimiento de los desperfectos por el accidente que había ocurrido antes del que motivó el pleito, y en el segundo por haber sido expresamente notificado por el arrendatario y haber prometido hacer las reparaciones aplazando éstas y dando lugar con ello a que ocurriera el accidente.

"Si bien en el caso de Louisiana titulado *Estes* v. *Aetna Casualty & S. Co.,* 157 So. 395, se sostiene la responsabilidad del arrendador por defecto de reparaciones aunque no haya sido notificado de la necesidad de las mismas, tal responsabilidad está fundada en el Art. 2695 del Código Civil de dicho Estado, que dice así:

" 'El arrendador garantiza al arrendatario contra todos los vicios y defectos de la cosa, que puedan impedir su uso, aún en el caso de que él nada sepa de la existencia de tales vicios y defectos a la fecha en que se celebró el arrendamiento, y aunque tales defectos hayan surgido después del arrendamiento, siempre que los mismos no hayan sido causados por la falta o culpa del arrendatario, y si cualquier daño sufriera el arrendatario como resultado de tales vicios y defectos, el arrendador estará obligado a indemnizárselos.'

"La misma regla impera en Francia, basada en el Art. 1721 del Código Civil francés, sustancialmente idéntico al 2695 de Luisiana. Pero como hemos visto, en Puerto Rico no existe tal precepto, . . ."

El apelante señala en su alegato dos errores, cometidos el primero a su juicio por la corte sentenciadora al desesti-

mar la demanda basada únicamente en que no hubo evidencia para sostener la alegación de que el arrendador tenía previo conocimiento del mal estado de la escalera, y el segundo cometido también a su juicio por la dicha corte al decidir que el demandante venía obligado a notificar al demandado el mal estado de la escalera para que surgiera su responsabilidad en relación con el mismo.

Con respecto al primer error bastará decir que si bien al estudiar la evidencia hemos encontrado en las declaraciones de algunos testigos manifestaciones que podrían inducirnos a concluir que el demandado conocía la exacta condición de la escalera, no las estimamos suficientes para sustituir nuestro juicio por el del juez sentenciador.

La consideración del segundo señalamiento de error envuelve la del problema fundamental a resolver en el recurso partiendo de las alegaciones, de la evidencia y de los hechos declarados probados por el juez sentenciador.

Dicho problema puede formularse así: ¿Está obligado el demandado, dueño de la casa de que se trata, que la dividió en apartamientos, alquilándolos a varias personas—una de ellas el demandante—y que mantuvo en su patio al aire libre una escalera de madera por la cual subían los inquilinos a una azotea a tender ropas y para otros usos, está obligado, repetimos, a conservar dicha escalera en condiciones de seguridad y si no lo hace a responder de los daños que uno de dichos inquilinos—la esposa del demandante—sufrió al caer de la escalera por hallarse podrido el borde inferior externo de uno de sus escalones, aunque el inquilino no le hubiera notificado, ni él tuviera conocimiento actual de dicha condición?

Si en Puerto Rico estuviera vigente como en Luisiana el precepto legal que transcribe en su opinión la corte de distrito, no habría cuestión. El problema hubiera estado resuelto de antemano en sentido afirmativo por el propio legislador.

Sin embargo, si bien no se encuentra en nuestro Código Civil precepto tan terminante como el de Luisiana, dicho Código contiene además de los artículos relativos a las obligaciones mutuas de arrendador y arrendatario en el contrato de arrendamiento que citó, interpretó y aplicó la corte de distrito, otro dentro de cuyo amplio marco encuadra a nuestro juicio la relación jurídica que surge de los hechos de este caso. Nos referimos a su artículo 1802 que prescribe: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Código Civil de Puerto Rico, ed. 1930, pág. 372.

Con la mente sin duda puesta en ese precepto fué que esta corte dijo en el caso de *Roa* v. *Puig et al.*, 19 D.P.R. 386, 392:

"El primer señalamiento de error se refiere a la conclusión a que ha llegado la corte sentenciadora con respecto a la negligencia de la apelante, en no ejecutar las obras necesarias de reparación en la casa ocupada por la apelada, con el fin de impedir la caída de la viga de dicha casa que tuvo lugar el día 14 de abril de 1911. Los autos demuestran claramente que no se hicieron las obras necesarias e indican suficientemente que fué por esto que la viga se desprendió y probablemente debido a las continuas lluvias se cayó de su sitio en el techo. El estatuto, artículo 398 del Código Civil, exime al dueño de responsabilidad por tales accidentes en los casos de fuerza mayor, pero no creemos que este caso esté comprendido en esa excepción. Si este accidente hubiera sido causado por un terremoto o por un rayo u otro fenómeno natural que raras veces ocurre, entonces la apelante hubiera quedado exenta de responsabilidad. Pero, por los resultados naturales que lleva consigo el tiempo de los trópicos a los cuales estamos sometidos en este clima, no puede hacerse excepción, y resulta por tanto la responsabilidad del dueño. Tampoco puede alegar la propietaria que no fué notificada por el inquilino de las condiciones en que se encontraba la casa. La ley no exige tal notificación y en el presente caso el mal estado de las vigas no era perceptible a simple vista. El apoderado, teniendo en cuenta el incidente ocurrido en septiembre del año anterior, debió estar sobre aviso y haber ordenado oportunamente un reconocimiento en forma de la viguería del techo para llevar a cabo las reparaciones que las circunstancias exigieran, librando así a su principal de cualquier imputación

de culpa o negligencia. Por consiguiente, debemos llegar a la conclusión de que el primer pronunciamiento de error que ha sido presentado por la apelante carece de fundamento.''

Y aplicándolo expresamente fué que resolvió años más tarde en el de *Pérez* v. *Gandía,* 32 D.P.R. 562, 564, lo que sigue:

''Discutiendo el primer error sostiene el apelante que no se alega en la demanda la existencia de contrato alguno válido entre demandante y demandado y que en el caso de que pudiera deducirse la existencia del contrato de arrendamiento no se alega el pago del precio, ni que el arrendatario pusiera en conocimiento del arrendador la necesidad de hacer reparaciones en la casa arrendada.

''Opinamos que el error no existe. La responsabilidad del demandado para con la demandante no se deriva de ningún contrato celebrado directamente con ella. Se alega en la demanda la existencia de un contrato de arrendamiento entre el demandado, dueño de la casa, y Conrado Rosario. La alegación de que la demandante 'estuviera haciendo vida matrimonial con Rosario,' era innecesaria. Rosario tenía derecho a recibir huéspedes, visitas, en la casa que para vivir alquiló. Cualquier persona pudo entrar en ella dentro del curso ordinario de los negocios. Y para con todos tenía el dueño obligaciones. El dueño estaba en el deber de conservar la casa en condiciones habitables y si teniendo conocimiento de su mal estado negligentemente dejó de corregir el defecto, es responsable del daño que con ello pudiera haber ocasionado. Su responsabilidad surge del quasi contrato a que se refiere el artículo 1803 del Código Civil en los siguientes términos: 'El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.'

''Basta lo anteriormente expuesto para concluir que no eran necesarias las alegaciones del pago del precio y de la notificación por parte del arrendatario al arrendador del defecto existente. Se alegó en debida forma el conocimiento del defecto por parte del arrendador a virtud de la notificación que le hicieran las autoridades sanitarias, y su negligencia al dejar de corregirlo.''

No se nos ha convencido de que el criterio de esta corte sea erróneo y de que debamos rectificar en el sentido de que este caso debe regularse exclusivamente por los preceptos del Código Civil relativos al arrendamiento sin que puedan apli-

carse los referentes a las acciones que surgen a virtud de culpa o negligencia. Al contrario, un estudio más amplio nos lleva a ratificar nuestra opinión.

"La obligación que recae sobre el dueño de un edificio bajo el artículo 2332 del Código Civil de responder de los daños a la persona que los sufra por la negligencia de dicho dueño al no mantener su edificio en buenas condiciones, lo es *ex delicto*", se dijo en *Klein* v. *Young*, 111 So. 495; y en *Schoppel* v. *Daly*, 36 So. 322, se expresó: "La existencia de relaciones contractuales entre dos partes no es impedimento al derecho de acción por daños y perjuicios ocasionados pendiente el contrato y con él conectados, aunque el contrato pueda afectar más o menos los derechos y obligaciones de las partes."

 Además, las circunstancias peculiares de este caso tales como surgen de la demanda, de la contestación, de la evidencia y de los hechos declarados probados por la corte sentenciadora, demuestran que el demandante no tenía la posesión exclusiva de la escalera sino meramente el derecho a su uso junto con los inquilinos de otro apartamiento, quedando el dueño en su posesión y control, habiéndose resuelto por las cortes del continente en situaciones semejantes lo que sigue:

"La responsabilidad del arrendador por los daños personales sufridos por los inquilinos y por las otras personas que estén relacionadas con éstos, debido al estado deficiente de los alrededores, pasillos, escaleras, etc., que están bajo el dominio del primero, está basada en el deber, impuéstole con motivo de la posesión y dominio que él tiene, de ejercer el debido cuidado para mantener en estado de seguridad esas partes del edificio, y el incumplimiento de ese deber es, desde luego, lo que constituye negligencia de parte suya." 25 A.L.R. 1292.

"La segunda cuestión es si la escalera aquí envuelta cae fuera de esa regla por el hecho de que la misma era utilizada conjuntamente por dos inquilinos en vez de por un gran número de ellos; y somos del criterio que no está fuera de esa regla. Fundándose la regla en consideraciones prácticas, la misma no debe limitarse me-

diante distinciones técnicas. A nuestro juicio ella se aplica en casos de escaleras corrientes utilizadas por unos cuantos inquilinos al igual que en casos en que son usadas por muchos.'' *Flanagan* v. *Welch*, 107 N.E. 979.

La regla se expone en el Restatement of the Law of Torts, en el volumen segundo, página 976, que trata sobre ''Negligence'', así:

''El poseedor de terrenos que cede en arrendamiento parte de los mismos y continúa en posesión de cualquier otra parte que el arrendatario tenga derecho a usar como dependencia de la parte cedídale, debe responder al arrendatario y a aquellas otras personas que legalmente se encuentren en la finca con consentimiento del arrendatario o subarrendatario de los daños personales sufridos por éstos por razón del estado peligroso de aquella parte del terreno que está bajo el dominio del arrendador, si este último mediante el ejercicio de cuidado razonable pudo haber determinado dicha condición y el riesgo irrazonable que la misma envolvía y pudo haber eliminado tal riesgo.'' Sección 360.

La jurisprudencia ha resuelto de modo terminante que no es necesario que se demuestre que el dueño tiene conocimiento actual del defecto. *Gill* v. *Middleton*, 105 Mass. 477; *Watkins* v. *Goodall*, 138 Mass. 533; *Readman* v. *Conway*, 126 Mass. 374; *Looney* v. *McLean*, 129 Mass. 33; *Lindsey* v. *Leighton*, 22 N.E. 901.

Si mediante el cuidado necesario que estaba obligado a tener, el defecto hubiera podido descubrirse y ese cuidado razonable no se tuvo, el dueño es responsable.

Y aquí en verdad tratándose como se trataba de una escalera construída de madera desde hacía años—ya estaba en el patio cuando el demandado compró la casa—expuesta a la acción destructora de los elementos, especialmente del agua, el demandado tenía el claro deber de examinarla o hacerla examinar dentro de períodos de tiempo razonables, a fin de cerciorarse de si se encontraba en condiciones de seguridad para su uso.

De haber cumplido con su deber, se hubiera enterado necesariamente del defecto, y siendo ello así puede imputársele

conocimiento constructivo del mismo. Conociéndolo, no lo reparó. Su negligencia es evidente y la responsabilidad que de ella se deriva inevitable.

"La experiencia común del hombre nos enseña que el deterioro que sufrió la madera debe haberse extendido durante un período considerable de tiempo; y en vista del hecho de que el deterioro se notaba más en la parte superior o en descubierto de la balaustrada y que el estado de la misma era tal que cuando se hacía presión contra ella la madera se salía de los clavos y se desmoronaba, aparecería claramente que el jurado, compuesto de hombres razonables, propiamente pudo haber resuelto que una inspección corriente y cuidadosa hubiera revelado el defecto en la balaustrada con tiempo suficiente para hacer las reparaciones antes de que la demandante sufriera las lesiones. En su consecuencia, no vacilamos en resolver que la prueba era enteramente suficiente para imputar conocimiento implícito y oportuno del estado defectuoso de la balaustrada por la parte demandada en forma tal que pueda imputársele negligencia el dejar de repararla o reconstruirla." *Bleisch* v. *Helfrich,* 6 S. W. (2d) 978.

Habiendo en consideración todo lo expuesto, debemos concluir que el error señalado fué cometido y que no siendo como no era necesaria la notificación al dueño por parte del inquilino ni la demostración de que el dueño tenía conocimiento actual del defecto para exigirle responsabilidad por el accidente ocurrido a causa del mismo, la demanda debió declararse con lugar. No lo fué y la sentencia dictada debe revocarse.

Ordena la ley que cuando este tribunal revoque una sentencia debe como regla general dictar la que debió haber dictado la corte de distrito y a ese efecto pide el apelante a esta corte que ordene al demandado que le pague aquella cantidad que tenga a bien determinar de acuerdo con la prueba que sobre daños y perjuicios se practicó, en concepto de indemnización por las lesiones personales sufridas por su esposa, imponiendo además al demandado el pago de las costas incluyendo una suma razonable para honorarios de su abogado.

496

Sabemos que el demandante reclamó doce mil ochocientos dólares. La cantidad a primera vista parece excesiva. "Como resultado de la caída sobre el piso de cemento", la demandante, declaró probado la corte sentenciadora, "sufrió la fractura conminuta del fémur izquierdo inmediatamente por debajo de los procánteres, con desplazamiento de los fragmentos, severas contusiones en el brazo izquierdo y varias otras en distintas partes del cuerpo."

Sin detenernos en una exposición minuciosa, habidas en consideración las circunstancias que concurren y siguiendo las normas de casos semejantes, nos parece razonable como indemnización la suma de dos mil dólares. El trabajo del abogado del apelante fué intenso y revela un detenido y acabado estudio de los hechos y la ley. Creemos que deben concederse como honorarios quinientos dólares.

*Debe dictarse la sentencia consiguiente.*

El Juez Asociado Sr. De Jesús no intervino.