JUAN MANUEL COLLAZO, demandante y recurrido, *v.* THE SHELL COMPANY (P.R.), LTD., demandada y recurrente.

*Número:* R-79-64     *Resuelto:* 27 de octubre de 1980

*McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria* y *Norberto Medina Zurinaga,* abogados de la demandada-recurrente; *Luis Garrastegui,* abogado del demandante-recurrido.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En el año 1972 la Shell Company terminó la construcción de un puesto de gasolina en jurisdicción de Lares, Puerto Rico. Para esos fines, encontró necesario alterar el nivel del terreno, dándole un leve declive para el desagüe de las aguas pluviales. Colinda allí con la Shell Company un solar de 3,700 metros cuadrados perteneciente al demandante. Las aguas pluviales del predio de la Shell discurren hasta un muro que separa ambas propiedades, pero éste tiene unos boquetes por el cual dichas aguas pasan a la propiedad del demandante, que es más baja que el solar de la Shell. El resto de las aguas que no pasan al solar del demandante, sale a la carretera.

Con motivo de estos hechos y de los que más adelante vamos a señalar, el demandante demandó a la Shell Company en daños y perjuicios y obtuvo una sentencia de $9,000 más costas y honorarios de abogado. La Shell Company, aquí recurrente, plantea 6 cuestiones, las cuales discutiremos después de completar la exposición de hechos.

Como se sabe, las estaciones de gasolina, además de las

aguas pluviales que sobre sus solares discurren, emiten otras aguas y desperdicios, que son producto de su operación. Estos líquidos y desperdicios generalmente incluyen aguas sucias, aceites, otros derivados del petróleo, productos químicos, etc.

En el caso de autos, el tribunal hizo una inspección ocular. En su opinión y sentencia, el tribunal de instancia se expresa en la siguiente forma:

En la inspección ocular realizada por el Tribunal se pudo observar que efectivamente existían unas salidas de agua del área del lavado de automóviles hacia el solar del demandante y que había un charco de aceite, grasa y agua aún en dicho solar, a pesar de que la parte demandada testificó en la vista del caso que se habían corregido las deficiencias que ocasionaron los daños al solar del demandante.

De las conclusiones de hecho del tribunal de instancia también surge lo siguiente. En 6 de mayo de 1972 la demandada arrendó a Wigberto Guzmán Munet la estación de gasolina, mediante contrato de arrendamiento escrito. Dicho contrato prohíbe al arrendatario realizar alteraciones en la propiedad arrendada. Debe el arrendatario mantener el local limpio al nivel que estipule la arrendadora, reservándose ésta el derecho de inspeccionar la propiedad y hacer las recomendaciones pertinentes. La demandada entregó al arrendatario el negocio y el equipo. La arrendadora se reservó el control del estado de servicio y de limpieza del negocio. También concluyó el tribunal de instancia lo siguiente:

CUATRO:—El diseño y construcción del garaje equipado fue responsabilidad única de la parte demandada disponiendo unos boquetes de desagüe a descargar sobre el solar de la parte demandante. El Tribunal pudo comprobar en la inspección ocular que las aguas sucias y aceites y desperdicios incluyendo las aguas de una bomba dañada caían por dichos desagües en el solar del demandante inundando el mismo, haciéndolos [sic] inservibles [sic].

CINCO:—Que la parte demandada con sus inspectores mantienen el control absoluto de la estructura y condiciones am-

bientales del garaje de gasolina de su propiedad, no teniendo el arrendatario ingerencia ni poder para alterar o modificar cualquier aspecto estructural o que implique alteraciones a lo existente.

*SEIS:*—Que la construcción y diseño del garaje de gasolina de la parte demandada disponiendo un desagüe lateral sobre el solar contiguo del demandante fue responsabilidad única y exclusiva de la parte demandada y dio margen a los daños causados al demandante, ya que estas aguas anegaron e inundaron con aceites, grasas y desperdicios al solar del demandante haciéndolo inservible para cualquier uso normal y razonable.

El solar del demandante es llano, queda frente a la Urbanización Altamira y el tribunal estimó que tiene un valor de más de $50,000. También concluyó que el demandante tuvo que invertir $9,000 en limpiar y acondicionar el solar para ponerlo en condiciones en que pudiese utilizarse. Esta suma comprende $3,000 gastados en el uso de maquinaria para hacer limpieza y $6,000 gastados en relleno y replanteo del solar. La sentencia incluyó esos $9,000 más las costas y $2,500 en concepto de honorarios de abogado.

Las cuestiones planteadas por la demandada-recurrente pueden resumirse como sigue: En la primera, la segunda y la cuarta cuestiona parte de las conclusiones de hecho del tribunal. En la tercera sostiene que el responsable es el arrendatario y no la arrendadora. En la quinta aduce que los daños se deben al discurrir natural de las aguas y en la sexta expresa que la suma concedida por concepto de honorarios de abogados es excesiva.

Atenderemos primero los dos planteamientos contenidos en las cuestiones quinta y tercera, relativos a los deberes de los predios de recibir las aguas pluviales de los predios superiores y a la responsabilidad del arrendador.

Esta materia está regida por las leyes especiales que para dichas circunstancias se han legislado —Ley y Reglamentos de Planificación, la Ley de Aguas— y por el Código Civil como derecho supletorio y fundamental. En el caso de

estaciones de gasolina, lavado y engrase, los reglamentos exigen unos interceptores que atrapen la grasa y el aceite y otras materias antes de que las aguas entren al sistema de alcantarillado. 23 R.&R.P.R. sec. 43-2057 y 22 R.&R.P.R. sec. 159-139. El Art. 69 de la Ley de Aguas, 12 L.P.R.A. sec. 701, dispone que cuando el dueño del predio inferior no ha concedido servidumbre, tiene derecho a compensación en caso de que reciba aguas de establecimientos industriales y puede negarse a recibirlas, si éstas contienen sustancias nocivas. En *Fuentes* v. *Gulf Petroleum, S.A.*, 91 D.P.R. 559, 565 (1964), se trataba precisamente de aguas impuras provenientes de una estación de gasolina y encontramos que no había derecho a verter las mismas sobre otro predio. Véase, además, *Martínez* v. *P.R. Coconut Industries*, 68 D.P.R. 243 (1948).

El Código Civil trata esta materia en sus Secciones I y II del Capítulo 183 del Título VII de su Libro II. Dicho Capítulo 183 trata de las servidumbres legales, 31 L.P.R.A. sec. 1701 y ss.

Establece en ese Capítulo el Código ciertas reglas sobre la posesión y aprovechamiento de los bienes reales, que desde antaño han sido necesarias para la buena convivencia social. Dispone el Código que las servidumbres impuestas por la ley tienen por objeto la utilidad pública o el interés de los particulares.

Las establecidas para utilidad pública se regirán por las leyes y reglamentos especiales que las determinan y, en su defecto, por las disposiciones de dicho Título VII del Código Civil. Las servidumbres que impone la ley en interés de los particulares, o por causa de utilidad privada, se regirán por las disposiciones de dicho Título VII, sin perjuicio de lo que dispongan las leyes y reglamentos sobre el particular. Éstas podrán ser modificadas por convenio de los interesados, cuando no lo prohíba la ley ni resulten en perjuicio de tercero. Código Civil, Arts. 485, 486 y 487.

■ Los predios inferiores están sujetos a recibir las aguas que naturalmente y *sin obra del hombre* descienden de los predios superiores. El dueño del predio inferior no puede hacer obras que impidan esta servidumbre, *ni el del superior obras que la agraven.* Código Civil, Art. 488.

■ Es claro que el demandante no viene obligado a recibir las aguas impuras y los desperdicios líquidos o sólidos de la estación de gasolina en cuestión.

■ En cuanto a las relaciones de arrendador y arrendatario, como se sabe, el arrendatario está obligado a pagar el precio del arrendamiento y a usar la cosa arrendada, destinándola al uso pactado. El arrendador viene obligado, además de entregar al arrendatario la cosa arrendada, a hacer en ella durante el arrendamiento todas las reparaciones necesarias, a fin de conservarla en estado de servir para el uso a que ha sido destinada. Código Civil, Art. 1444. Puede deducirse que si la cosa arrendada se convierte en una amenaza para el público o para sus vecinos, el arrendador viene obligado a hacer las reparaciones necesarias para que cese ese peligro o para que cesen los daños que esté causando, pues, de lo contrario, no la estaría conservando en estado de servir para el uso a que fue destinada y por cuyo uso el arrendatario le paga. Con mayor razón es esto así en el caso de autos, en el cual el contrato —como es usual— le prohíbe al arrendatario hacer alteraciones en la propiedad arrendada. (¹)

Sobre el particular se han expresado casi unánimemente los más distinguidos comentaristas españoles. Veamos, por ejemplo, las siguientes expresiones:

---

(¹) Para casos no idénticos, pero *in pari materia* en que hemos reiterado la obligación del dueño de hacer las reparaciones, véanse *Roa* v. *Puig Et Al.,* 19 D.P.R. 386 (1913); *Pérez* v. *Gandía,* 32 D.P.R. 562 (1923); *Miranda* v. *Méndez,* 50 D.P.R. 850 (1937); *Torres* v. *Fernández,* 56 D.P.R. 482 (1940); *Ortiz* v. *McCormick Steamship Co.,* 57 D.P.R. 560 (1940); *Arroyo* v. *Caldas,* 68 D.P.R. 689 (1948); *Ramírez* v. *Hotel Condado,* 68 D.P.R. 953 (1948); *Santaella Negrón* v. *Licari,* 83 D.P.R. 887 (1961); y *Corchado* v. *Fernández Carballo,* 88 D.P.R. 100 (1963).

[S]erá el propietario responsable, aunque la finca estuviere arrendada y aunque pueda acreditar no le corresponde culpa alguna en la falta de reparaciones, que no realizó, por ejemplo, porque no le diera el arrendatario aviso de la necesidad de las mismas . . . o porque la desidia en reparar no fué suya, sino de anteriores propietarios. Sin embargo, cabrá que ejercite acción de regreso, basada en el artículo 1.902 contra los verdaderos culpables del daño. . . . 31 Scaevola, *Código Civil*, 1961, pág. 520.

[E]l art. 1.907 hay que entenderlo en relación con el párrafo tercero del 1.559 y con la disposición general y amplísima del 1.902. Según el primero de ellos, el propietario podrá repetir contra el arrendatario, si estuviese arrendada la finca, y éste no pusiere en conocimiento de aquél, en el más breve plazo posible, la necesidad de las reparaciones precisas. . . . Resulta, pues, que la falta de noticia o la ignorancia de la necesidad de las reparaciones no exime al propietario de la obligación de reparar los daños de que nos ocupamos, pero le da derecho para repetir contra el arrendatario que omitió el aviso necesario. . . .

Además, si la falta de reparaciones. . .dependió, no de la voluntad del propietario, sino de un tercero. . .podrá repetir contra el que le dio ocasión al daño con arreglo al principio consignado en el artículo 1.902. 12 Manresa, *Comentarios al Código Civil Español,* 1973, pág. 910.

El actor perjudicado ha de probar en este caso las siguientes circunstancias: la realidad del daño, que ha sido ocasionado por la ruina del edificio y que esta ruina ha sido debida a la falta de las reparaciones necesarias. Demostrados tales extremos, la acción ejercitada por el actor surtirá efectos con independencia de la valoración subjetiva de la conducta del demandado. . . . Puig Brutau, *Fundamentos de Derecho Civil*, 1956, T. II, Vol. II, pág. 696.

Habiendo establecido la prueba que existían desagües que descargaban el agua del lavado de carros y otras impurezas sobre el solar del demandante, éste tiene derecho a ser compensado. También podría exigirse que cesara tal perturbación. *Fuentes* v. *Gulf Petroleum, S.A.*, supra, y *Reyes* v. *Hernández*, 98 D.P.R. 484 (1970).

En cuanto a las cuestiones sobre la prueba, un examen del caso y de las conclusiones del tribunal de instancia nos persuaden de que no debemos intervenir con ella. La sexta y última cuestión sobre los honorarios de $2,500 tampoco nos mueve a intervenir con la orden del tribunal de instancia.

*En vista de lo anterior, se anulará el auto expedido y se confirmará la sentencia recurrida.*

El Juez Asociado Señor Martín concurre con el resultado.